IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA

v.                                                              Criminal No. 2:18-cr-00198

KEITH ALLEN SIZEMORE

MEMORANDUM IN SUPPORT
OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

The known facts of the matters leading up to the Fayette County Sheriff's Department's September 7, 2017, search of the defendant's residence have been set forth in the defendant's Motion to Suppress. The residential search was illegal and violated the defendant's Fourth Amendment rights in a variety of ways. First, the application for search warrant failed to present sufficient facts to support a reasonable belief that quantities of heroin would be found at the defendant's residence. Specifically, there was a lack of a nexus between the Sheriff's Department's observation of Melissa Figueroa's criminal conduct in a public parking lot to the defendant's residence on Woods Avenue. Second, the allegation set forth in the search warrant application that Melissa Figueroa "lived or stayed at" the defendant's residence was either an intentional misstatement and/or made in reckless disregard for its truth. When that specific allegation is removed from Sgt. Morris' application, the remaining factual basis is insufficient to support any probable cause determination to support a search of the defendant's residence.

The incriminating statements made by the defendant during a September 7, 2017, custodial interrogation at the Fayette County Sheriff's Department should be suppressed as a result of the Fourth Amendment violations arising from the search. As there was no causal break between the illegal search and the defendant's interview, this Court should find that (1) all physical evidence seized from the defendant's residence; and (2) all of the incriminating statements made during the defendant's custodial interview should be suppressed.

## ARGUMENT

**(1) The September 7, 2017, application for search warrant failed to set forth sufficient facts to support a probable cause determination that heroin would likely be found at the defendant's home on Woods Avenue.**

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV; *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011); *United States v. Doyle*, 650 F.3d 460, 466 (4th Cir. 2011). The Supreme Court has recently held that "[w]hen it comes to the Fourth Amendment, the home is first among equals." *Florida v. Jardines*, 569 U.S. 1, 6 (2013).

The critical element in assessing whether a reasonable search has taken place is not that the owner of property is suspected of crime, but that there is reasonable cause to believe that specific "things" are located on the property. *Doyle*, 650 F.3d at 471. The well recognized "totality-of-the-circumstances" test requires the issuing magistrate to make a "practical, commonsense decision, whether, given all the

circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Wilhelm,* 80 F.3d 116, 119 (4th Cir. 1996). In *Gates*, the Supreme Court found that an anonymous letter alleging that a couple had been involved in drug dealing, by itself, could not provide probable cause to believe drugs would be found in the couple's home. *Id.* at 227. A police search of the couple's car and home was upheld where the Government was able to provide independent corroboration through police surveillance of the couple's activities. *Id.* at 225-227. The Fourth Circuit reviewed the underlying facts presented in *Wilhelm* and concluded that the affidavit fell far short of providing probable cause for a search warrant. 80 F.3d at 121. The only corroboration which the officer provided for the informant's tip was the directions to the defendant's home. *Id.*

The probable cause determination further requires the showing of a nexus between the place to be searched and the items to be seized. *United States v. Allen*, 631 F.3d 164, 173 (4th Cir. 2011); *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988). The majority of reported decisions have discussed the nexus requirement in the context of the search of a residence where it was undisputed that the defendant lived or otherwise had an ownership interest. In *Anderson*, the police had obtained a search warrant for the defendant's residence to look for a .45 caliber pistol and silencer after learning that the defendant had offered to sell the items to three police informants. 851 F.2d at 728. One informant had stated that the weapon had been

used in a murder. *Id.* Although the search warrant did not contain any facts or conclusions that the pistol and silencer were actually located within the residence, the requisite nexus to the defendant's residence had been satisfied as it was reasonable for officers to believe that people keep guns within their home. *Id.* at 729.

The Fourth Circuit has recognized that the nexus requirement is satisfied where there was evidence that the suspect was involved with a drug trafficking crime coupled with the reasonable suspicion that drug traffickers store drugs in their homes. *United States v. Williams,* 548 F.3d 311, 319 (4th Cir. 2008); *United States v. Grossman,* 400 F.3d 212, 217-218 (4th Cir. 2005). In *Grossman,* police had received information from a confidential source advising that the defendant was selling large quantities of cocaine and keeping it in stash houses in the Baltimore area. 400 F.3d at 214. The police considered the informant to be credible based upon the accuracy of past information that he had provided. *Id.* A criminal background check of the defendant further showed that he had been convicted of past felony drug offenses. *Id.*

Surveillance of the defendant's car showed that, in the opinion of the officers, the defendant was driving in a manner to avoid police surveillance. *Id.* at 215. The surveillance of the defendant's car ultimately led the officers to a house where the defendant was observed using a set of keys to open the front door. *Id.* The defendant remained inside for approximately forty minutes before leaving. *Id.* When approached by police, the defendant gave several false statements about his conduct. *Id.* The defendant initially claimed that his girlfriend had let him into the house, and then could not recall how to spell her name. *Id.* The defendant also admitted that he

4

had stayed at the residence. *Id.* A search warrant was obtained for the residence which resulted in the seizure of $10,000 in cash and a 9 mm handgun that had an obliterated serial number. Two other homes were searched as a result of the evidence found during the search of the first residence.

On appeal, the defendant challenged the validity of the search warrant issued for the home based upon the lack of a nexus between suspected criminal activity and the three houses. *Id*. at 217-218. The defendant claimed that he did not reside in any of the three searched homes and that he was only a guest who stayed in each home two to three days a week. The Fourth Circuit found sufficient probable cause based upon the cumulative evidence of the confidential informant's reliable past, the defendant's prior criminal record, his suspicious explanations of his conduct to the officer, and the defendant's use of a key to enter the first residence.

Where police fail to present any evidence to connect drug activity to a residence, then a search warrant issued for that residence is not supported by probable cause. *United States v. Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993). In *Lalor*, police had obtained a search warrant for a residence based upon information provided by two informants. 996 F.2d at 1579. The first informant said that a man named "Jamaican John" was selling cocaine, that he lived on Waverly Way in Baltimore, and drove a blue Dodge Daytona with a distinctive license plate. The second informant said that he had purchased cocaine from Jamaican John on numerous occasions and that Jamaican John lived with his girlfriend in apartments located on Waverly Way. *Id.*

5

The police had confirmed some of the provided information and observed a blue Dodge Daytona with a distinctive license plate parked on Waverly Way and had cited the driver (the defendant) for numerous traffic violations. *Id.* at 1580. Another officer was aware that the defendant went by the name of Jamaican John. Officers further learned that one specific apartment on Waverly Way had been rented to a woman whose listed boyfriend had the same date of birth as the defendant. *Id.* A search warrant was obtained for that apartment which resulted in the seizure of cocaine, a firearm, and a large amount of cash. *Id.*

On appeal, the defendant challenged the validity of the issued search warrant on the ground that there was insufficient probable cause to connect the drug activity alleged by the informants with the apartment on Waverly Way. *Id.* at 1582. The Fourth Circuit agreed with the defendant in that the presented affidavit was devoid of any facts from which a magistrate could infer evidence of drug activity at the residence. *Id.* The search was saved under the *Leon* good faith exception as no *Franks* violation was found to exist as that the affidavit had not been prepared by the police in bad faith. *Id.* at 1583.

**(2) Defendant should be entitled to a *Franks* hearing because there is tangible evidence in this case that the Fayette County Sheriff's Department intentionally and/or in reckless disregard of the truth misrepresented that Melissa Figueroa lived or stayed at the defendant's home on Woods Avenue.**

The inclusion of a false statement concerning Melissa Figueroa's residency at the Woods Avenue residence should preclude the Government from relying upon the *Leon* good faith exception to save the search of the defendant's home. *United States*

*v. Leon*, 468 U.S. 867, 923 (1984); *United States v. Doyle*, 650 F.3d 460, 467 (4th Cir. 2011); *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002). The first exception to the application of the good faith rule is where the judicial officer was "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Id.*

The Supreme Court has developed a two prong test which a defendant must pass when challenging the veracity of statements contained in an affidavit supporting a search warrant. *Franks v. Delaware*, 438 U.S. 154, 155-156 (1978); *United States v. Lull*, 824 F.3d 109, 113-114 (4th Cir. 2016). First, a defendant must show that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." One of the ways for establishing reckless disregard is proffering evidence that a police officer failed to inform the judicial officer of acts which he knew would negate probable cause. *Lull,* 824 F.3d at 117. A showing that an officer acted negligently is not sufficient to warrant suppression. *Lull*, 824 F.3d at 115.

In this instance, the defendant has presented an affidavit from Melissa Figueroa which clearly disputes Sgt. Morris' assertion in the affidavit that she lived or stayed at the defendant's home on Woods Avenue. Ex. F. There is further evidence that Sgt. Morris was aware that the defendant resided at the Woods Avenue address because of his involvement in the July 12, 2017, search of the defendant's truck. Ex. C. Melissa Figueroa was issued a citation that same day for possession of marijuana and gave the officers a residential address of Prudence Road. Ex. B. Upon

7

information and belief, there was no further surveillance conducted of Woods Avenue to determine whether Melissa Figueroa was living there or whether any drug trafficking activity was underway. There were no controlled buys made from the Woods Avenue address. Based upon the nature of the prior contacts the Fayette County Sheriff's Department had with the defendant and Ms. Figueroa, there was no reliable information that Melissa Figueroa lived or stayed at the defendant's home on September 7, 2017.

The second component of the *Franks* test is an analysis of the materiality of the false information contained within the affidavit. *Lull*, 824 F.3d at 114. Where the information set forth within a warrant was illegally obtained or presented in a misleading manner, the remainder of the affidavit is to be examined to determine whether a probable cause determination could have been made. *Lull,* 834 F.3d at 118. This materiality assessment considers the totality of circumstances by evaluating the affidavit as a whole.

With the removal of the reference to Melissa Figueroa's residence at the Woods Avenue address, there are no other specific facts set forth in the affidavit that would allow a reasonable magistrate to conclude that heroin was being stored at that residence. The two purchases of heroin from Melissa Figueroa occurred in a public parking lot and not at the Woods Avenue address. The fact that she stopped at the Woods Avenue address between the two sales is of no significance. At that time, the defendant had not been implicated in any distribution of heroin, so there was no

8

reason to believe that Ms. Figueroa had obtained the heroin sold in the first or second sales to the informant from that address.

The affidavit's remaining allegations concerning suspected drug activity at the house fall under the category of unverified anonymous tips. An anonymous tip, standing alone, cannot provide the sole basis for police to establish probable cause to initiate an investigative stop of a person or to undertake a search of private property. *Florida v. J.L.* 529 U.S. 266, 271 (2000); *United States v. Jones*, 242 F.3d 215, 218 (4th Cir. 2001); *Wilhelm*, 80 F.3d at 119. In *Florida v. J.L.*, the Supreme Court found that an anonymous telephone tip that a young African American man was carrying a gun was insufficient to warrant a police stop and frisk of the man for weapons. 529 U.S. at 271. Where the tip provided "no predictive information" and left the police without the means to test the informant's credibility or knowledge, there was insufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop. *Id.*

The Fourth Circuit in *Jones* found the circumstances presented by the anonymous tip to be similar to those presented to the Supreme Court in *Florida v. J.L.* 242 F.3d at 218. In *Jones*, a police dispatcher received an anonymous 911 call that several black males were drinking beer and causing a disturbance at an intersection. *Id.* at 216. An officer was dispatched to the area to investigate and found that all was clear at the identified intersection. *Id.* After leaving the area, the officer noticed a car heading his direction which had four African American males, so he decided to stop the car. *Id.* A subsequent pat down search of one of the occupants

revealed a plastic bag of crack cocaine. On appeal, the Fourth Circuit found that the anonymous tip lacked sufficient indicia of reliability as there was no physical description provided of the males and no explanation as to how the caller was aware of any disturbance.

Anonymous tips cannot form the basis for obtaining search warrants of homes. In *Wilhelm*, a police officer received a call from a "reliable source who is a concerned citizen" that he/she recently observed marijuana in the defendant's home. *Id.* at 118. The affidavit prepared by the officer to obtain a search warrant contained the following additional information:

> Informant stated to applicant the directions to this residence and the directions have been confirmed to be true by the applicant through surveillance on this date. The informant described the substance he/she believed to be marijuana and the informants [sic] description is consistent with the applicants [sic] knowledge of marijuana . . . . Informant also observed a quanity [sic] of un-sold marijuana at this residence within the last 48 hours.

*Id.* There was no independent corroboration of the informant's information by police, and the officer admitted that the informant was a person she did not personally know. *Id.* For these reasons, this Court should find that once the false reference to Melissa Figueroa living at the defendant's residence is removed from Sgt. Morris' affidavit, there are insufficient remaining facts to establish a nexus between Melissa Figueroa's drug dealing activities and the defendant's home that would support the issuance of any search warrant.

**(3) The incriminating statements made by the defendant while he was in custody after the search of his home should be suppressed under the fruit of the poisonous tree doctrine as a product of the previous Fourth Amendment violation committed by the Fayette County Sheriff's Department.**

Once it has been determined that an illegal seizure has taken place, the next step is to determine whether the Fourth Amendment violation(s) would preclude the Government from using incriminating statements made by the defendant as being obtained from the product of the illegal seizure. The Supreme Court has repeatedly held that, in certain situations, incriminating statements obtained from the exploitation of an illegal arrest may <u>not</u> be used against a criminal defendant. *Taylor v. Alabama*, 457 U.S. 687, 690 (1982); *Brown v. Illinois*, 422 U.S. 590, 603 (1975); *Dunaway v. New York*, 442 U.S. 200, 217 (1979); *Wong Sun v. United States*, 371 U.S. 471, 486 (1963).

These cases have recognized that an interplay exists between the Fourth and Fifth Amendments to the extent that the issuance of a *Miranda* warning prior to a custodial interrogation does <u>not</u>, by itself, automatically remove the taint of an illegal search or seizure. *Id.* A confession obtained through a custodial interrogation, following an illegal arrest, is to be suppressed unless intervening events break the causal connection between the illegal arrest and the confession. *Id.* The factors which should be considered in making this determination include "the temporal proximity of the arrest and the confession, the presence of intervening circumstances . . . and, particularly, the purpose and flagrancy of the official misconduct." *Taylor*, 457 U.S. at 690; *Brown,* 422 at 603-604; *Dunaway*, 442 U.S. at 218. Otherwise, the Fourth

11

Amendment prohibition against illegal searches and seizures would become reduced to a "mere form of words" if the giving of *Miranda* warnings cured all such violations. *Id.*

Incriminating statements made within a short interval of time directly following an illegal arrest have been found by the Supreme Court to <u>not</u> have been given as the product of a free will. *Taylor,* 457 U.S. at 691; *Brown*, 422 U.S. at 597. In *Taylor*, police had received a tip from an incarcerated person that the defendant had been involved in a robbery of a local grocery store. 457 U.S. at 689. The tipster had not told the police where he had obtained this information or provided any details of how the crime was committed. *Id.* Nevertheless, the police proceeded to arrest the defendant without obtaining a warrant and he was taken to a police station for questioning. The defendant was advised of his Miranda rights and shortly thereafter waived his rights and executed a written confession. *Id.*

The Supreme Court initially found that an illegal arrest had taken place of the defendant as the tip was insufficient to provide the police with probable cause. *Id.* The Court noted that the circumstances of the defendant's arrest and confession were virtually similar to those in the Court's previous cases of *Brown v. Illinois*, *supra*, and *Dunaway v. New York*, *supra*. *Id.* at 690. In those two prior instances, defendants had been illegally arrested, taken to police headquarters, advised of their Miranda warnings, and gave confessions within two hours of their illegal arrest. *Id.* Both defendants had been arrested without probable cause in the hope that something would turn up and confessed without any meaningful event. While the length of time

between the illegal arrest and confession for the defendant in *Taylor* was six hours, the Government could not identify any intervening event that would serve to break the causal connection between the illegal arrest and subsequent confession. *Id.* at 691. In Taylor, the Court held that the defendant's confession was the fruit of his illegal arrest and found it was reversible error for his confession to have been admitted during his trial. *Id.* at 694.

The Fourth Circuit in *Watson* followed this line of Supreme Court cases and held a defendant's confession should have been suppressed as the product of an illegal arrest. 703 F.3d at 690. The Court rejected the Government's arguments for justifying the three hour long unlawful detention on grounds to prevent the destruction of evidence and to ensure officer safety. *Id.* These grounds were found to not to have justified the "significant intrusion" on the defendant's Fourth Amendment rights where during the entire course of the three hour detention, the police had no reason to believe that the defendant was linked to any criminal activity. *Id.* Moreover, the detention occurred in a confined space under constant police surveillance before any search warrant had been issued. Where the Government failed to meet its burden to demonstrate a legitimate public interest in a three hour detention, the detention was unreasonable and the defendant's confession should have been suppressed. *Id.* at 694.

In the instant case, the illegal search of the defendant's home resulted in the defendant being taken to the Fayette County Sheriff's Department for questioning. This occurred within an hour after the initiation of the search of his home. There was

no causal break in the defendant's case for purposes of this Court finding that his incriminating statements were nothing other than the fruit of the previous illegal search of his home.

For the reasons set forth herein, as well as those expressed in the Motion to Suppress, the defendant moves this Court to grant the defendant's Motion and preclude the Government from introducing any of the identified items of physical evidence identified in the Motion to Suppress as well as precluding the introduction of the defendant's statements made during a September 7, 2017, custodial interview.

Respectfully submitted this 20th day of December, 2018.

**KEITH ALLEN SIZEMORE**

By Counsel

**BRIAN J. KORNBRATH**
**ACTING FEDERAL PUBLIC DEFENDER**

**s/David R. Bungard**
David R. Bungard, Bar Number: 5739
Assistant Federal Public Defender
Office of the Federal Public Defender
300 Virginia Street, East, Room 3400
Charleston, WV 25301
Telephone: (304) 347-3350
Facsimile: (304) 347-3356
E-mail: david_bungard@fd.org