IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.					CRIMINAL NO. 2:18-cr-00198

KEITH ALLEN SIZEMORE

RESPONSE OF THE UNITED STATES OF AMERICA
TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Comes now the United States of America by Joshua C. Hanks, Assistant United States Attorney, and hereby responds to defendant's Motion to Suppress Evidence. For the reasons set forth herein, defendant's motion should be denied.

BACKGROUND

On July 10, 2017, Detective Sergeant S.R. Morris of the Fayette County, West Virginia Sheriff's Department received information from an informant (CI#1) that defendant was planning to travel to Detroit, Michigan for the purpose of acquiring heroin. Morris is assigned to the Central West Virginia Drug Task Force (CWVDTF), and CI#1 had made a number of controlled drug purchases for the CWVDTF in the months leading up to July 10, 2017. Based upon the success of the controlled drug purchases, Morris considered CI#1 to be reliable.

On July 12, 2017, CI#1 advised Morris that defendant was on his way back to West Virginia from Detroit, Michigan. At approximately 1:41 p.m., drug canine handler, Sergeant T.N. Mooney observed defendant's pickup truck and noted that the passenger was not wearing a seatbelt. Mooney stopped the vehicle. Defendant was driving, and Melissa Figueroa was the sole passenger. After a positive alert from K-9 Arras, Mooney searched the truck and found a small amount of marijuana. Figueroa claimed the marijuana belonged to her. She further stated that she and defendant had just returned from Detroit, Michigan and that she believed there was heroin in the truck. Police searched the truck pursuant to search warrant but did not locate any heroin. Figueroa was cited for simple possession of marijuana and failure to wear a seat belt.

Morris traveled to defendant's residence later that evening to discuss the search of the pickup truck. While there, Morris briefly spoke with Figueroa at defendant's residence where she was staying with defendant's daughter, Amber Evans. A short time thereafter, CI#1 advised Morris that police missed seizing the heroin because Figueroa had it concealed on her person. Police never recovered the heroin defendant and Figueroa brought back from Detroit.

On September 7, 2017, Morris, along with Detective-Sergeant C.A. Young of the CWVDTF observed Figueroa pull into the parking lot of the Dollar Tree in Oak Hill, West Virginia and conduct a suspected drug transaction with an individual in another vehicle. Morris and Young conducted a traffic stop of Figueroa's customer after that person drove away from the Dollar Tree. The person gave Morris and Young a quantity of heroin and stated that s/he had just purchased the heroin from Figueroa. The person (CI#2) also agreed to work as an informant for the CWVDTF. After releasing CI#2 from the scene, Morris and Young traveled to defendant's residence on Woods Avenue in Oak Hill where they observed Figueroa's vehicle parked in front of the residence.

On the same day, Morris and Young used CI#2 to make a controlled purchase of heroin from Figueroa. They provided CI#2 with prerecorded currency and a recording device and then traveled to a location where they could conduct surveillance of defendant's Woods Avenue residence. They observed Figueroa leave the residence with another person and drive to the Dollar Tree parking lot. Morris and Young observed Figueroa briefly enter CI#2's vehicle. They followed Figueroa back to defendant's residence at the conclusion of the deal. Morris then met with CI#2 and retrieved the quantity of heroin that Figueroa had just sold.

Following the September 7, 2017, controlled purchase of heroin, Morris applied for and obtained a search warrant for defendant's residence (See Attached Exhibit A). In addition to summarizing their observations of Figueroa's activities and the controlled purchase, Morris also stated in his affidavit that the CWVDTF had received citizen complaints of drug activity by defendant and his daughter, Amber Evans who also lived at the residence. Id. Morris further stated that he had received other information that Figueroa lived or stayed at the residence. Id.

Morris, other members of the CWVDTF, and several law enforcement officers executed the search warrant on September 7, 2017. Defendant was home at the time. Figueroa was not. Investigators seized approximately 112 grams of heroin, scales, money, and two firearms from the residence. Defendant waived his Miranda rights and gave a recorded statement wherein he admitted purchasing heroin in Detroit, Michigan and distributing it in and around Oak Hill, Fayette County, West Virginia. Defendant admitted that the heroin seized from the residence was his. He further admitted that he and Figueroa had approximately 80 grams of heroin that officers failed to locate during the traffic stop the previous July.

## **DISCUSSION**

Defendant seeks to suppress all evidence seized from his residence on September 7, 2017 as well as his recorded statement and transcript of the same. Defendant's argument rests entirely on his claim that Morris' assertion that Figueroa lived or stayed at defendant's residence was false. He claims that because Figueroa did not live at the residence, there were insufficient facts to establish a nexus between the criminal conduct and the residence. Consequently, he argues that the evidence obtained therefrom should be suppressed.

Defendant's argument is based on an unduly narrow view of nexus that would ultimately create a new legal standard limiting a judicial officer's nexus determination to instances where a target of investigation has an ownership or residential tie to the property to be searched. Moreover, defendant's argument would additionally require the Court to define the concepts of "lived" and "stayed at" such that it could determine whether the affidavit contains false information. Defendant's arguments are unsupported by law, and his motion should be denied.

1.  **Probable Cause**

Once a search warrant has been issued, review of the probable cause determination by the judicial officer is to be shown "great deference." United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 2008). "[T]he task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue to warrant." Massachusetts v. Upton, 466 U.S. 727, 728 (1984). Accord Illinois v. Gates, 462 U.S. 213, 231-38 (1983).

The Supreme Court has described "probable cause" to search as "a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238. "When issuing a warrant making a probable cause determination, judges are to use a 'totality of the circumstances analysis.'" United States v. Grossman, 400 F.3d 212, 217 (4th Cir. 2005) (quoting Gates, 462 U.S. at 238). Probable cause may be established through information from any reliable source or sources. Draper v. United States, 358 U.S. 307, 313 (1959). "An officer's report in his affidavit of the target's prior criminal activity or record is clearly material to the probable cause determination." United States v. Bynum, 293 F.3d 192, 197-98 (4th Cir. 2002) (citing

cases). Accord <u>United States v. Miller</u>, 925 F.2d 695, 699–700 (4th Cir. 1991) (informant's tip corroborated, in part, because "officer knew that [the defendant] had been involved in illegal narcotics in the past" based on prior arrest). An affidavit must also establish a nexus between the criminal conduct, the items to be seized, and the place to be searched. <u>United States v. Anderson</u>, 851 F.2d 727, 729 (4th Cir. 1988).

Contrary to defendant's argument, the question in this case is not whether there was probable cause that *defendant* was involved in the criminal activity leading to the search of his home. Rather, the question is whether there was substantial evidence in the affidavit supporting the magistrate's probable cause determination. <u>Upton</u>, 466 U.S. at 728. The probable cause determination, of course, includes the magistrate's finding that there was a sufficient nexus between the drug trafficking activity and the place to be searched, that is, defendant's residence. As noted in defendant's motion, nexus is often established when the place to be searched is the residence of the target of investigation. <u>See</u> e.g. <u>Anderson</u>, 851 F.2d at 729. However, nexus may also be established where, as here, the target of investigation (i.e. Figueroa) has access to the place to be searched. <u>See</u> e.g. <u>Grossman</u>, 400 F.3d at 217–18.

7

In this case, Detective-Sergeant Morris personally observed Melissa Figueroa distribute heroin on two separate occasions on September 7, 2017, the same day he obtained and executed the search warrant. On the first occasion, Morris observed Figueroa's vehicle parked in front of defendant's residence immediately following the transaction. On the second occasion, Morris observed Figueroa depart the residence prior to meeting with the informant and return to the residence immediately following the deal. Moreover, from his interaction with Figueroa on July 12, 2017, Morris knew that Figueroa had a connection to defendant and Amber Evans, that Figueroa lived or stayed at the residence with Evans, and that she had admitted being with defendant when he transported heroin from Detroit, Michigan to Oak Hill, West Virginia.

This background coupled with Morris' September 7, 2017 observations established both probable cause of Figueroa's criminal activity and the nexus between that activity and defendant's residence. Defendant's claim that probable cause required more specific evidence of Figueroa's residential ties to defendant's house is not supported by law and should be rejected by the Court.

Clearly, the magistrate's probable cause determination was supported by the "substantial evidence" set forth in the affidavit.

Upton, 466 U.S. at 728. Consequently, defendant's motion should be denied.

2. **Franks Hearing**

The overwhelming majority of defendant's motion addresses the statement in Morris' affidavit that Melissa Figueroa "lived or stayed at" defendant's residence. Defendant asserts that this statement was untrue. According to his argument, the accuracy of this statement is important for two related reasons. First, as discussed in the previous section, defendant claims that if Figueroa did not "live or stay" at the residence, there was insufficient proof of a nexus between Figueroa's criminal conduct and the residence to establish probable cause for the search warrant. Second, defendant argues because the statement was false, Morris either intentionally or recklessly included the false statement, and defendant should be entitled to a hearing under Franks v. Delaware, 438 U.S. 154, 155-56 (1978) as part of his motion to suppress evidence.

As a preliminary matter, Morris' statement that he had prior knowledge that Figueroa "lived or stayed at" defendant's residence was true. Morris had previously been told that Figueroa was in a relationship with defendant's daughter, Amber Evans. This was corroborated on July 12, 2017 when Morris encountered Figueroa at

9

defendant's residence several hours after the traffic stop. At that time, Figueroa was staying at the residence. Additionally, on September 7, 2017, *the day he applied for the search warrant*, Morris observed Figueroa at the residence on two occasions related to heroin transactions.

Before being entitled to a <u>Franks</u> hearing, defendant must satisfy a two-pronged inquiry. First, defendant must show that the affiant "knowingly and intentionally, or with reckless disregard for the truth" included a false statement in a search warrant affidavit. <u>Franks</u>, 438 U.S. at 155-56 (quotations omitted). Second, defendant must show that the offending information in the affidavit was essential to the probable cause determination. <u>Id.</u>

In this case, defendant fails both prongs. First, defendant fails to establish that Morris included false information in his affidavit. The statement that he had information that Figueroa "lived or stayed at" defendant's residence was true. He had observed her at the residence on two separate occasions between July 12 and September 7, 2017. He had seen her vehicle there on at least one other occasion on September 7, 2017. He knew about her relationship with defendant's daughter, Amber Evans. He had personally interacted with Figueroa and Evans at the residence

under circumstances leading him to conclude that Figueroa was staying or living there in July 2017.

The fact that Figueroa had given the Fayette County Court a different residency address is of some relevance to the question of where she lived but is of no relevance at all to the question of where she occasionally stayed. Morris is an experienced drug investigator and knew that individuals involved in drug trafficking and drug abuse frequently change residences and often stay overnight in residences owned or maintained by family, friends, or even co-conspirators and confederates. It was reasonable and accurate for him to describe Figueroa's connection to defendant's residence as a place she "lived or stayed at."

Defendant also fails to establish the second prong under Franks. As noted in the previous section, the precise relationship Figueroa had with defendant's residence is unimportant. The question is simply whether there was a nexus between Figueroa's conduct and the residence. That nexus was sufficiently established by Morris' observations of Figueroa being at the residence immediately prior to and after two heroin transactions on the day Morris applied for the warrant. Figueroa's historical relationship to the residence was corroborative evidence, but it was not essential to the probable cause determination.

Defendant fails to establish the existence of false information in the affidavit, much less that such information was intentionally or recklessly included. Moreover, even if Figueroa did not live or stay at the residence – however such terms are or should be defined – that fact was not essential to the magistrate's probable cause determination. Consequently, his motion should be denied.

### 3. Good Faith

Even if a reviewing court determines that a search warrant was invalid, evidence obtained from that warrant "will be suppressed only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." United States v. Lalor, 996 F.2d 1578, 1583 (4th Cir. 1993) quoting United States v. Leon, 468 U.S. 897, 926 (1984) (internal quotations omitted). The so-called good faith exception to suppressing evidence obtained pursuant to an invalid warrant applies unless "a reasonable well-trained officer . . . [should] have known that the search was illegal despite the magistrates' authorization." Leon, 468 U.S. at 922 n.23. Accord United States v. DeQuasie, 373 F.3d 509, 519-20 (4th Cir. 2004).

The Supreme Court has identified four situations in which an officer's reliance on a search warrant would not be reasonable, and therefore, the good faith exception would not apply:

> 1) the magistrate was misled by information in the affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;
>
> 2) the magistrate wholly abandoned his detached and neutral judicial role;
>
> 3) the warrant was based on an affidavit so lacking on indicia of probable cause as to render official belief in its existence entirely unreasonable; and
>
> 4) the warrant was so facially deficient, by failing to particularize the place to be searched or things to be seized, that the executing officers cannot reasonable presume it to be valid.

United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995), quoting, Leon, 468 U.S. at 923. Accord United States v. Wellman, 663 F.3d 224, 228-29 (4th Cir. 2011).

In this case, even if the Court were to determine that there was insufficient nexus between Figueroa's conduct and defendant's residence, the officers could rely on the warrant in good faith unless the magistrate was misled by information in the affidavit. The other exceptions to good faith under Leon are not even arguably applicable in this case. As noted in the previous sections, the United States submits that Morris included no false or otherwise

inaccurate information in the affidavit. Consequently, defendant's motion should fail as argued above.

Nevertheless, assuming that Morris was inaccurate in claiming Figueroa was known to "live or stay at" defendant's residence under a hyper-technical definition of those concepts, there is still no evidence that the magistrate was misled. The unchallenged information in the affidavit is that the officers observed Figueroa at the residence immediately before and after she sold heroin to CI#2 the day Morris obtained the warrant. Whether she lived or stayed at the residence was corroboratively relevant but not essential to the magistrate's probable cause determination. Consequently, the magistrate was not misled even if this Court were to conclude that Figueroa did not live or stay at the residence.

**CONCLUSION**

For the reasons set forth herein, defendant's motion to suppress evidence should be denied.

Respectfully submitted,

MICHAEL B. STUART
United States Attorney

By: /s/ Joshua C. Hanks
Joshua C. Hanks
Assistant United States Attorney
WV Bar No. 8550
300 Virginia Street, East
Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5705
Email: josh.hanks@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

It is hereby certified that the foregoing "RESPONSE OF THE UNITED STATES OF AMERICA TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this 31st day of December, 2018 to:

>David R. Bungard, Esquire
>Office of the Federal Public Defender
>300 Virginia Street, East, Room 3400
>Charleston, WV 25301
>Email: david_bungard@fd.org

>/s/Joshua C. Hanks
>Joshua C. Hanks
>Assistant United States Attorney
>WV Bar No.8550
>300 Virginia Street, East
>Room 4000
>Charleston, WV 25301
>Telephone: 304-345-2200
>Fax: 304-347-5705
>Email:josh.hanks@usdoj.gov